## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECRET BOSTON LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| FEVER LABS, INC. D/B/A "SECRET | ) | |
| BOSTON" AND "SECRET MEDIA | ) | |
| NETWORK", | ) | |
| | ) | |
| Defendant. | | |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Secret Boston LLC ("Plaintiff" or "Secret Boston"), brings this civil action against Defendant, Fever Labs, Inc., d/b/a "Secret Boston" or "Secret Media Network" ("Defendant"), and alleges as follows:

## NATURE OF ACTION

1.      This is an action for trademark infringement, unfair competition, and false designation of origin, and cybersquatting  under the federal Lanham Act, including 15 USC §1114 *et seq.*, and particularly 15 USC § 1125(a) & (d), and the Unfair and Deceptive Trade Practices Act, Mass. Gen. Laws ch. 93A, §§ 1, 2, and 11, and common law.  Defendant has wholly adopted a mark identical to Plaintiff's well-known SECRET BOSTON trademark into its own trademarks and trade names.  Defendant uses its infringing trademarks and trade names to promote and offer services that directly compete with or, at minimum, are highly overlapping with, the services offered by Plaintiff.  Such use has caused widespread actual confusion and is likely to continue to cause confusion in the marketplace, all while Defendant unlawfully trades

off of Plaintiff's goodwill and reputation.  Defendant's acts amount to willful trademark infringement and unfair competition and Plaintiff seeks preliminary and permanent injunctive relief, damages, treble damages, and its attorney's fees and costs, as well as other relief authorized under federal and state law.

## THE PARTIES

2.      Plaintiff, Secret Boston, is a Delaware limited liability company with a principal place of business located at 68 Centre Street, Boston, MA 02130.

3.      Upon information and belief, Defendant, Fever Labs, Inc., is a Delaware corporation with principal places of business located at 379 West Broadway, Suite 408, New York, NY 10012, and 2140 S Dupont Highway, Camden, Delaware 19934.

4.      At all times relevant hereto, Defendant has been doing business in this judicial district.

## JURISDICTION AND VENUE

5.      This is a civil action for injunctive relief and damages for violations of the Lanham Act under 15 U.S.C. § 1114 et seq., false designation of origin, and unfair competition arising under the Lanham Act, 15 U.S.C. § 1125(a) & (d), and under Mass. Gen. Laws ch. 93A, §§ 1, 2, and 11.

6.      This court has jurisdiction pursuant to 15 U.S.C. §§ 1119, 1125 and 28 U.S.C. §§ 1331, 1338.

7.      This is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  Federal jurisdiction therefore exists under 28 U.S.C. § 1332.

8.      This Court has personal jurisdiction over the Defendant. The Defendant has created a substantial presence on the Internet directly related to the Greater Boston area and is specifically targeting Massachusetts residents, out-of-state tourists planning to travel to Massachusetts, and Massachusetts businesses, including retail stores, restaurants, hotels, and entertainment facilities.

9.      Furthermore, this Court has personal jurisdiction over the Defendant because at all relevant times: (a) the Defendant has and/or had sufficient minimum contacts with the forum as a result of providing services specifically targeting Massachusetts; and (b) its conduct subjects it to the controlling long-arm statute.

10.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Defendant is subject to personal jurisdiction in the Commonwealth of Massachusetts and/or the wrongful acts committed by Defendant occurred, and are causing injury, in the Commonwealth of Massachusetts.

## PLAINTIFF AND ITS TRADEMARK RIGHTS

11.      Plaintiff is a well-known organizer and promoter of various events and provider of cultural information about the Greater Boston area, which operates under the trademark "SECRET BOSTON" (the "Mark").  In particular, Plaintiff provides information in the fields of cultural events, community events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodations, and related event organization and advertising services related to the Greater Boston area (collectively, "Plaintiff's Services").  See Exhibit A for a printout of Plaintiff's website located at the domain name, www.secretboston.net ("Plaintiff's Domain").

12.      Since at least 2010, Plaintiff has provided Plaintiff's Services under the Mark throughout the United States, including in Massachusetts, primarily through social media.  See

Exhibit B for a printout of Plaintiff's Facebook® page showing a selection of posts promoting Plaintiff's Services from 2010.

13.     The Mark is, at minimum, suggestive and therefore inherently distinctive and eligible for trademark protection under the Lanham Act.

14.     Notwithstanding its inherent distinctiveness, Plaintiff has acquired secondary meaning in the Mark through its substantially exclusive and continuous use of the Mark to promote Plaintiff's Services since at least 2010.

15.     Plaintiff, the Mark, and Plaintiff's Services have been promoted in various regional publications, including the Boston Globe and Metro. Attached as Exhibit C are printouts of a selection of Plaintiff's media coverage.

16.     Plaintiff has an extensive social media following, promoting a conscious connection in the public's mind between the Mark and Plaintiff' Services, including the platforms below:

| Social Media Platform | Followers |
|---|---|
| Facebook® Page | 93,000+ |
| Facebook® Private Group | 47,000+ |
| Instagram® | 60,000+ |
| Tik Tok® | 18,000+ |
| Twitter® | 3,000+ |

Attached as Exhibit D are printouts from Plaintiff's social media accounts displaying the number of its followers.

17.     While Plaintiff has a strong reputation and following throughout the Commonwealth of Massachusetts, it provides Plaintiff's Services under the Mark to followers throughout the country and indeed, throughout the world. Attached as <u>Exhibit E</u> are printouts from Plaintiff's web traffic analytics tools showing the geographic distribution of traffic to its Facebook® Page and Plaintiff's Domain for June 18, 2021-June 25, 2021.

18.     Nearly 140,000 individuals subscribe to Plaintiff's e-newsletter promoting Plaintiff's Services.  Attached as <u>Exhibit F</u> are printouts of a selection of Plaintiff's e-newsletters from as early as 2013.

19.     Secret Boston also works with over 2,000 event promotors, referred to by Secret Boston as "ambassadors", who attend events and help promote and publicize events through Secret Boston's social media outlets.

20.     Based on Secret Boston's popular social media accounts and thriving email list, Secret Boston has a robust following of individuals, both within and outside of Massachusetts, who are familiar with, and readily associate, the Mark with Plaintiff and Plaintiff's Services.

21.     As shown in the selection of e-newsletters attached as <u>Exhibit F</u> promoting corporate sponsored events, Secret Boston regularly works with corporate clients to promote their businesses and events and such corporate clients are also familiar with, and readily associate, the Mark with Plaintiff and Plaintiff's Services.

22.     Since adopting the SECRET BOSTON trademark, Plaintiff has expended significant resources in the development of its business, goodwill and the reputation associated with the SECRET BOSTON trademark, including on advertising, promotional activities, and protecting and enforcing its exclusive rights in its Mark.

23.     Plaintiff enjoys exclusive rights in its Mark by virtue of its use of SECRET BOSTON in interstate commerce in connection with Plaintiff's Services since at least 2010.  The Mark is valid, subsisting, distinctive, and exclusively owned by Plaintiff.

24.     As a result of Plaintiff's extensive promotional efforts and its long use of its Mark, SECRET BOSTON has become uniquely identified with Plaintiff in the minds of consumers and has come to signify the high quality of services offered by Plaintiff.

25.     Plaintiff has acquired invaluable goodwill in the Mark and said Mark has become well-known and recognizable to the relevant public.

## DEFENDANT'S INFRINGING ACTIVITIES AND ACTS OF UNFAIR COMPETITION

26.     On information and belief, as early as 2016, Defendant's business model has been to organize, promote, and provide information in the fields of cultural events, community events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodations, and related event organization and advertising services related to a particular city (collectively, "Defendant's Services") under a family of marks that follow the format "SECRET [CITY]" throughout the world through its d/b/a "Secret Media Network." See Exhibit G for printouts of Defendant's websites located at www.feverup.com and www.secretmedianetwork.com.

27.     On information and belief, Defendant launched each of these websites and began using the related SECRET [CITY] mark after Plaintiff first adopted and used in commerce its SECRET BOSTON trademark for same or similar services.

28.     In Defendant's  U.S. trademark registration for SECRET NYC (Reg. No. 5767128) and abandoned applications for SECRET LA (Ser. No. 88789711), and SECRET CHICAGO (Ser. No. 88789665), Defendant itself described Defendant's Services as follows:

CLASS 35: Advertising services, namely, promoting and marketing the goods and services of others in the field of cultural events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodation via print and electronic media; provision of an on-line marketplace for buyers and sellers of services; the bringing together of consumers and providers of a variety of services in the field of cultural events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodation; Renting of advertising spaces

CLASS 41: Organizing community sporting and cultural events; Social club services, namely, arranging, organizing, conducting and hosting social events, social entertainment events, special events, get-togethers, and parties for club members for entertainment purposes; providing information, news and commentary in the fields of community events, social events, sports, sporting events, cultural events and entertainment events

CLASS 43: Providing information and advice on hotels and restaurants to tourists and business travelers

The foregoing descriptions are herein incorporated into the definition of "Defendant's Services."

See Exhibit H for printouts of the issued registration and applications for Defendant's "SECRET [CITY]" trademarks as submitted to the U.S. Patent and Trademark Office ("USPTO").

29.     Defendant's trademark applications allege the following dates of first use: SECRET CHICAGO (March 14, 2018), SECRET LA (March 14, 2018), and SECRET NYC (January 11, 2016).  On information and belief, Defendant first adopted a SECRET [CITY] mark no earlier than 2016.

30.     On information and belief, the entity Secret Media Network was formed in 2017, and is a d/b/a and/or licensed entity affiliate of and under the control of Fever Labs, Inc.  Fever Labs, Inc. is the applicant at the USPTO for the marks SECRET CHICAGO (abandoned), SECRET LA (abandoned), and SECRET NYC (registered), each using as specimens printouts of webpages identifying "Secret Media Network" and the email domain address @secretmedianetwork.com.  See Exhibit G for copies of the specimens submitted by Defendant to the USPTO in support of its applications.

31.     On its website, www.secretmedianetwork.com, Defendant asserts that, collectively through its network of Channels using "SECRET [CITY]," Defendant's "audience" has 7 Million followers, 53 Million monthly reach, 19 Million monthly page views and 2 Million weekly views. See Exhibit G.

32.     Despite Plaintiff's prior rights in and to the Mark, on information and belief, Defendant began providing Defendant's Services targeting the Greater Boston area using the name and identical trademark "SECRET BOSTON"  and/or the confusingly similar trademark "SECRET MEDIA BOSTON" (collectively, the "Infringing Marks") on or around June 12, 2020, long after Plaintiff acquired exclusive rights in the Mark. See Exhibit I for a printout of Defendant's website located at www.secretboston.com ("Infringing Domain").

33.     Defendant's Services provided under the Infringing Marks are similar to, overlap with and directly compete with Plaintiff's Services provided under the Mark.

34.     Defendant's Services provided under the Infringing Marks are offered and provided throughout the United States, including in Massachusetts, through its website located at the Infringing Domain and its social media accounts, including @secretmediaboston and @secretboston.smn on Facebook® and @secret_boston on Instagram® (collectively, the "Defendant's Social Media Accounts"). See Exhibit J for printouts of the Defendant's Social Media Accounts.

35.     The Infringing Domain wholly adopts the Mark and is identical to Plaintiff's domain name, www.secretboston.net, except that Defendant has adopted a different generic top-level domain (".com") into its Infringing Domain.

36.     On information and belief, Defendant and/or its officers were aware of Plaintiff, Plaintiff's Mark, and Plaintiff's Services prior to launching Defendant's Services and at an

absolute minimum, prior to launching Defendant's Services under the Infringing Marks. In particular, Defendant would have discovered Plaintiff owned the domain name www.secretboston.net on which Plaintiff promotes the Mark and the associated Plaintiff's Services under it prior to registering the Infringing Domain through a basic Internet search. Attached as <u>Exhibit K</u> is a printout showing various search engines that continue to list Plaintiff's Domain as the first search result for searches for "Secret Boston."

37.     On information and belief, Defendant's CEO and founder, Ignacio Bachiller, was exposed to Plaintiff, Plaintiff's Mark, and Plaintiff's Services while living in the Greater Boston area during the four years he attended the Massachusetts Institution of Technology (MIT) in Cambridge, Massachusetts, from 2010 to 2014, a period during which Plaintiff Secret Boston was already actively promoting its services under the SECRET BOSTON Mark in Massachusetts, including to MIT students.  Attached as <u>Exhibit L</u> is a printout from Mr. Bachiller's public LinkedIn® profile showing he attended MIT.

38.     Because Defendant has adopted the identical or confusingly similar Infringing Marks and offers Defendant's Services, which directly compete and overlap with Plaintiff's Services provided under its Mark, prospective purchasers, and consumers of the Defendant's Services, and others are likely to be confused as to whether the services offered under Defendant's Infringing Marks emanate from or are in some way affiliated with, sponsored, or approved by Plaintiff.

39.     Defendant's use of Plaintiff's SECRET BOSTON Mark has already led to actual confusion.

40.     For example, there has been actual confusion concerning competing Vincent Van Gogh exhibits, namely, Defendant's event entitled "Van Gogh– The Immersive Experience"

("Defendant's Van Gogh Event") promoted using the Infringing Marks and a third-party organized event entitled "Immersive Van Gogh" (the "IVG Event"), which Plaintiff has promoted under its Mark. Attached as Exhibit M are press release from the Better Business Bureau about confusion between Defendant's Van Gogh Event and the IVG Event, and related press regarding such.

41.    Plaintiff has received numerous phone complaints from distraught consumers who purchased tickets for Defendant's Van Gogh Event indicating that they confused Plaintiff for Defendant when purchasing tickets.  Examples include:

a.    A call received February 3, 2021 complaining about a cancelled event purportedly organized by Defendant and demanding a refund.

b.    A call received May 1, 2021 complaining about the lack of an event and the requirement to download a FEVER branded mobile application in order to use the tickets purchased for an event purportedly organized by Defendant and demanding a refund.

c.    A call received May 6, 2021 complaining about the requirement to download a FEVER branded mobile application in order to use the tickets purchased for an event purportedly organized by Defendant and demanding a refund.

d.    A call received May 6, 2021 demanding a refund for tickets purchased for an event purportedly organized by Defendant.

Attached as Exhibit N is a summary of phone calls received by Plaintiff.

42.    Plaintiff has also received numerous email complaints from upset customers who purchased tickets for Defendant's Van Gogh Event indicating that they confused Plaintiff for Defendant when purchasing tickets.  Examples include:

10

a. "I would like to know by tomorrow, March 4 where it will be held or I will contact my credit card company to arrange to cancel the tickets. And, before you remind me that the tickets are non-refundable, I'm not sure that will be true if your program has been misrepresented. I would appreciate your prompt attention to my request."- from an Earthlink.net account on March 3, 2021.

b. "I hope you have some luck in reclaiming Secret Boston. I 100% thought that they made their initial announcement through you when this whole thing started. It took me a few days to realize that they had created an identically named entity and were in no way affiliated with the Secret Boston that I've known of for years."- from an event venue provider on March 8, 2021.

c. "I also was under the impression that this was You , I purchased tickets online and downloaded the fever app which is where the barcode tix are , with no location as of yet..... I'm so embarrassed that I fell victim to this."- from a Gmail account on March 11, 2021.

d. "Are you affiliated with the Fraudulent Secret Boston Site that is taking people's money for a copycat or fake show?"- from a Yahoo account on March 7, 2021.

Attached as Exhibit O are printouts of a selection of written complaints received by Plaintiff mistaking it for Defendant.

43.     As referenced in Exhibits M-O, Defendant's Van Gogh Event is the subject of widespread consumer complaints as consumers are upset over Defendant's purported "nonrefundable" ticket policy as well as Defendant's practice of withholding the event location even after customers purchase tickets.

44.    On information and belief, the actual confusion associated with the Defendant's Van Gogh Event has been revealed largely because of Defendant's negligent administration of Defendant's Services in that event, but this evidence also strongly suggests the very same level of confusion occurring with respect to other Defendant sponsored or offered events, where these confused consumers may have had no reason to contact Plaintiff to complain or for refunds, yet still believing they had done business with Plaintiff Secret Boston rather than Defendant.

45.    Indeed, actual confusion between Secret Boston and the Defendant based on Defendant's continued use of the Infringing Mark continues to this day and Secret Boston continues to field questions from consumers confused as to what relationship Secret Boston has with Defendant. Examples include:

- "You are not the true Secret Boston."-email from a bhcc.edu account on June 8, 2021 in response to receiving one of Secret Boston's e-newsletters.

- "I have been a follower of Secret Boston for years and am wondering if there is third party scam before I purchase tickets as the ads seem to be deceiving. "-email from an outlook.com account received on June 28, 2021.

- "hey, did you guys change your logo? i like the black and white better than the gold"- email from an aol.com account received on June 28, 2021.  See Exhibit J showing Defendant's use of a gold colored logo on one of its Facebook® pages.

Attached as Exhibit P are printouts of a selection of written inquiries from June of 2021, received by Plaintiff mistaking it for Defendant.

46.    Defendant's use of the Infringing Mark has tarnished Plaintiff's reputation because Defendant's Services have been provided negligently and have caused numerous problems and consumer complaints, including to the Better Business Bureau.

47.     On March 10, 2021, Defendant wrote to Plaintiff, purportedly to discuss ways to avoid confusion between the Infringing Domain and Plaintiff's www.secretboston.net (the "Letter").

48.     Plaintiff's and Defendant's respective counsel exchanged over a dozen correspondences related to the Letter and a potential resolution of the matter from April 8, 2021, through June 10, 2021, but were unable to resolve the matter.

49.     As of the filing of this Complaint, Defendant continues its unauthorized, misleading, and infringing use of the Infringing Marks despite being put on notice regarding Plaintiff's valid and exclusive trademark rights.

### FIRST CLAIM FOR RELIEF
**(Federal Unfair Competition-False Designations of Origin,
False Descriptions and Representations, Unregistered Trademark Infringement)
[15 U.S.C. § 1125(a)]**

50.     Plaintiff incorporates all prior allegations as if set forth fully herein.

51.     This is a claim for unfair competition-false designations of origin, false descriptions and representations of and infringement of the Mark SECRET BOSTON arising under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

52.     Plaintiff's use and ownership of the Mark predates any use of the Infringing Marks by Defendant. Accordingly, Plaintiff is the exclusive owner of the Mark and, accordingly, has express authority to take action to prevent actual or threatened infringement of its trademark.

53.     Continually, for a long time prior to the acts of the Defendant complained of herein, Plaintiff offered Plaintiff's Services under its SECRET BOSTON Mark.  Plaintiff's Services have been, and are now extensively, advertised throughout Massachusetts, New England, and beyond.

54.     Continually, for a long time prior to the acts of the Defendant complained of herein, Plaintiff has been and is now marketing and offering Plaintiff's Services bearing the Mark in the Commonwealth of Massachusetts and elsewhere in interstate commerce.  Through Plaintiff's extensive offering of its services, the public has come to recognize Plaintiff's Services as being of excellent quality and reputation.

55.     Plaintiff's Services offered under the Mark have been continuous and have been for the purpose of acquainting the public with the excellent quality of Plaintiff's services so that consumers may, with knowledge and confidence, purchase and use Plaintiff's SECRET BOSTON-branded services.  As a result, Plaintiff's Services offered under the Mark are well-known, and the Mark has come to be and is recognized by the public as indicating that the services offered under the Mark originate with Plaintiff.

56.     By reason of their high quality and as a result of Plaintiff's continued and extensive sales, advertising and promotion, Plaintiff's services offered under the Mark enjoy an excellent reputation among the public.  The Mark, and all associated goodwill which have accrued to the Mark, are of great value to Plaintiff in the conduct of its business.

57.     Defendant, with full knowledge of the distinctiveness and public recognition of the Mark, is promoting and offering services to the public under the Infringing Mark and Defendant's Services directly compete with and/or are highly related to Plaintiff's Services.

58.     Defendant's use of the Infringing Marks constitutes use of a mark and trade name that is identical and/or confusingly similar to the Mark owned by Plaintiff and, as such, is confusing and misleading to the purchasing public.

59.     The unauthorized use of the Infringing Marks in connection with Defendant's Services constitutes a false designation of origin and false description or representation that

14

wrongly and falsely designates the services offered by the Defendant as originating from, connected with, sponsored or authorized by Plaintiff.

60.     Defendant's conduct is intentional and willful.

61.     Defendant's acts, as described in this Complaint, constitute a false designation of origin and false description and infringement within the meaning of 15 U.S.C. § 1125(a). Plaintiff has been damaged and will continue to be damaged by Defendant's acts.

62.     Defendant's conduct is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation and will continue both to damage Plaintiff and to deceive the public unless preliminarily and permanently enjoined by this Court.

63.     Plaintiff is without an adequate remedy at law and is entitled to preliminary and permanent injunctive relief.

**SECOND CLAIM FOR RELIEF**
**(State Unfair Competition Law)**
**[Mass. Gen. Laws. ch. 93A, §§ 1, 2, and 11]**

64.     Plaintiff incorporates all prior allegations as if set forth fully herein.

65.     Defendant engages in trade and commerce within the Commonwealth of Massachusetts within the meaning of Mass. Gen. Laws ch. 93A, §§ 1 and 11.

66.     Plaintiff engages in trade and commerce within the Commonwealth of Massachusetts within the meaning of Mass. Gen. Laws ch. 93A, §§ 1 and 11.

67.     Defendant's wrongful acts as described in this Complaint occurred primarily and substantially within the Commonwealth of Massachusetts.

68.     Defendant's acts within Massachusetts as described in this Complaint constitute unfair methods of competition or unfair or deceptive acts or practices in Massachusetts within the meaning of the Unfair and Deceptive Trade Practices Act, Mass. Gen. Laws ch. 93A, §§ 2,

and 11 and are a knowing and willful violation thereof.  Plaintiff has been damaged and will continue to be damaged by Defendant's acts.

69.     Defendant's violations of Mass. Gen. Laws ch. 93A, §§ 2 and 11 have or may have the effect of causing a loss of money or property to Plaintiff.  As such, Plaintiff is entitled to injunctive relief pursuant to Mass. Gen. Laws ch. 93A, § 11.

70.     Plaintiff is seeking injunctive relief, treble damages, and reasonable attorney's fees and costs incurred in this action pursuant to Mass. Gen. Laws ch. 93A, § 11.

71.     Plaintiff is without an adequate remedy at law and is entitled to a permanent injunctive relief.

## THIRD CLAIM FOR RELIEF
### (Violation of Anti-cyberquatting Consumer Protection Act)
### [15 U.S.C. § 1125(d)]

72.     Plaintiff incorporates all prior allegations as if set forth fully herein.

73.     The Mark was distinctive at the time Defendant registered the Infringing Domain.

74.     The Infringing Domain is identical or confusingly similar to the Mark.

75.     On information and belief, Defendant had a bad faith intent to profit from the Mark by registering and using the Infringing Domain.

76.     Specifically, Defendant has promoted and distributed Defendant's Services on and through the Infringing Domain with knowledge of Secret Boston's prior rights in order to trade on and profit from Secret Boston's goodwill.

77.     Defendant must have expected that any use of the Infringing Domain would cause harm to Secret Boston.  The Infringing Domain– wholly incorporating the Mark– is so obviously indicative of being authorized by Secret Boston that Defendant's use of the Infringing Domain inevitably leads to confusion.

78.     Defendant's acts as described in this Complaint constitute cybersquatting within the meaning of 15 U.S.C. § 1125(d).  Plaintiff has been damaged and will continue to be damaged by Defendant's acts.

79.     Defendant's conduct is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation, and will continue both to damage Plaintiff and to deceive the public unless preliminarily and permanently enjoined by this Court.  Plaintiff has no adequate remedy at law.

80.     Plaintiff seeks transfer of the Infringing Domain pursuant to 15 USC § 1125(d)(1)(C).

81.     Plaintiff is without an adequate remedy at law and is entitled to a permanent injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully asks that this Court:

1.          Grant a preliminary and permanent injunction enjoining and restraining the Defendant, including its officers, directors, employees, agents, servants, successors and assigns, as well as all those in active concert and participation with it, from:

A.     substantially imitating, copying, counterfeiting, or making unauthorized use of the Mark, including but not limited to use of the trademarks and trade names SECRET BOSTON and SECRET MEDIA BOSTON;

B.     using any false description or designation of origin or representation (including, without limitation, any letters, words,

symbols, or other text) which can, or is likely to, lead the trade or public, or individual members thereof to believe that any service advertised or offered by the Defendant is in any manner associated or connected with Plaintiff or is associated, licensed, sponsored, or approved by Plaintiff;

C.   engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation or dilute the distinctive quality of Plaintiff's name and the Mark;

D.   engaging in any other activity constituting an infringement of the Mark or Plaintiff's rights in or right to exploit the same;

E.   engaging in further acts of unfair competition arising from the Defendant's unlawful and improper adoption and use of the Mark;

F.   engaging in further acts of unfair competition arising from Defendant's use of the Infringing Domain and Infringing Social Media Accounts;

G.   secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, acquiring, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of unauthorized products or services which infringe the Mark;

H. causing an infringement of any of Plaintiff's Mark or of Plaintiff's rights to use or to exploit said Mark, or causing any dilution of Plaintiff's name, reputation or goodwill; and

I. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (A) through (H), above.

2. Enter an order:

A. Finding that the Defendant has infringed the Mark by the acts complained of herein;

B. Finding that the Defendant has unfairly competed with Plaintiff by the acts complained of herein;

C. Finding that the Defendant has violated the cyberprivacy provision of 15 USC § 1125(d).

D. Directing that all infringing and misleading materials in Defendant's possession, including but not limited to all brochures, signage, labels, mailings, and advertisements, be delivered to an officer of the Court to be destroyed pursuant to 15 U.S.C. § 1118;

E. Directing the domain registrar for the Infringing Domain to transfer ownership to Plaintiff;

F.     Directing the respective social media platforms for the Infringing Social Media Accounts to transfer ownership to Plaintiff;

G.     Requiring that the Defendant, within thirty (30) days after service of notice of the entry of judgment, or an injunction pursuant thereto, file with the Court and serve on Plaintiff's counsel a written report under oath setting forth in detail the manner in which the Defendant has complied with the Court's order;

H.     Awarding Plaintiff damages for the harm caused to its reputation and goodwill, and for Defendant's profits gained as a result of Defendant's wrongful actions, in an amount to be determined at trial;

I.     Increasing such damages by three times the actual amount found, as provided for under 15 U.S.C. § 1117; Mass. Gen. Laws ch. 93A, § 11 and Mass. Gen. Laws ch. 110H, § 14;

J.     Awarding Plaintiff the costs of this action and reasonable attorneys' fees and investigators' fees in accordance with 15 U.S.C. § 1117; Mass. Gen. Laws ch. 93A, § 11 and Mass. Gen. Laws ch. 110H, § 14; and

K.     Awarding to Plaintiff such other and further relief as this Court may deem just and proper, together with the costs and

disbursements which Plaintiff has incurred in connection with this action.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted,

**SECRET BOSTON LLC**

By its Attorneys,

BURNS & LEVINSON LLP

By:     */s/ Howard J. Susser*

Howard J. Susser (BBO #636183)
Deborah J. Peckham (BBO #564865)
Brooke A. Penrose (BBO #679830)
Burns & Levinson LLP
125 High Street
Boston, MA  02110
Telephone: 617.345.3000
Facsimile:  617.345.3299
hsusser@burnslev.com
dpeckham@burnslev.com
bpenrose@burnslev.com

Dated: June 30, 2021