# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECRET BOSTON LLC,<br>        Plaintiff,<br><br>v.<br><br>FEVER LABS, INC. D/B/A "SECRET BOSTON" AND SECRET MEDIA NETWORK,<br>        Defendant.<br><br>and<br><br>FEVER LABS, INC.,<br>        Counterclaim-Plaintiff,<br><br>v.<br><br>SECRET BOSTON LLC,<br>        Counterclaim-Defendant,<br><br>and<br><br>MICHELLE MCCORMACK,<br>        Third-Party Defendant. | Civil Action No. 1:21-cv-11087-LTS |

## DEFENDANT FEVER LABS INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Fever Labs, Inc. ("Fever"), by and through its undersigned counsel, hereby

responds to the Complaint (ECF No. 1) filed by Plaintiff Secret Boston LLC ("Plaintiff").

Except as expressly admitted below, Fever denies each and every allegation of the Complaint.

## **NATURE OF THE ACTION**

**Allegation No. 1:**     This is an action for trademark infringement, unfair competition, and false

designation of origin, and cybersquatting under the federal Lanham Act, including 15 USC

§1114 *et seq.*, and particularly 15 USC § 1125(a) & (d), and the Unfair and Deceptive Trade

Practices Act, Mass. Gen. Laws ch. 93A, §§ 1, 2, and 11, and common law. Defendant has

wholly adopted a mark identical to Plaintiff's well-known SECRET BOSTON trademark into its

own trademarks and trade names. Defendant uses its infringing trademarks and trade names to

promote and offer services that directly compete with or, at minimum, are highly overlapping

with, the services offered by Plaintiff. Such use has caused widespread actual confusion and is

likely to continue to cause confusion in the marketplace, all while Defendant unlawfully trades

off of Plaintiff's goodwill and reputation. Defendant's acts amount to willful trademark

infringement and unfair competition and Plaintiff seeks preliminary and permanent injunctive

relief, damages, treble damages, and its attorney's fees and costs, as well as other relief

authorized under federal and state law.

    1.     Fever denies the allegations in Paragraph 1.

**Allegation No. 2:**     Plaintiff, Secret Boston, is a Delaware limited liability company with a

principal place of business located at 68 Centre Street, Boston, MA 02130.

    2.     Fever is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 2, and therefore denies the same.

**Allegation No. 3:**     Upon information and belief, Defendant, Fever Labs, Inc., is a Delaware

corporation with principal places of business located at 379 West Broadway, Suite 408, New

York, NY 10012, and 2140 S Dupont Highway, Camden, Delaware 19934.

    3.     Fever admits that it is a Delaware corporation with offices in New York, New

York, and Camden, Delaware.

**Allegation No. 4:**     At all times relevant hereto, Defendant has been doing business in this judicial district.

4.     Fever admits that it does business in this judicial district.  Except as so admitted, Fever denies the allegations of Paragraph 4.

## JURISDICTION AND VENUE

**Allegation No. 5:**     This is a civil action for injunctive relief and damages for violations of the Lanham Act under 15 U.S.C. § 1114 et seq., false designation of origin, and unfair competition arising under the Lanham Act, 15 U.S.C. § 1125(a) & (d), and under Mass. Gen. Laws ch. 93A, §§ 1, 2, and 11.

5.     Paragraph 5 is a narrative for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 5.

**Allegation No. 6:**     This court has jurisdiction pursuant to 15 U.S.C. §§ 1119, 1125 and 28 U.S.C. §§ 1331, 1338.

6.     Paragraph 6 states a legal conclusion for which no answer is required.  To the extent an answer is required, Fever denies the allegations of Paragraph 6.

**Allegation No. 7:**     This is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Federal jurisdiction therefore exists under 28 U.S.C. § 1332.

7.     Paragraph 7 states a legal conclusion for which no answer is required.  To the extent an answer is required, Fever denies the allegations of Paragraph 7.

**Allegation No. 8:**     This Court has personal jurisdiction over the Defendant. The Defendant has created a substantial presence on the Internet directly related to the Greater Boston area and is specifically targeting Massachusetts residents, out-of-state tourists planning to travel to

Massachusetts, and Massachusetts businesses, including retail stores, restaurants, hotels, and entertainment facilities.

8.     The allegations of the first sentence of Paragraph 8 of the Complaint constitute legal conclusions to which no response of Fever is required.  Fever denies the remaining allegations of Paragraph 8 of the Complaint.

**Allegation No. 9:**     Furthermore, this Court has personal jurisdiction over the Defendant because at all relevant times: (a) the Defendant has and/or had sufficient minimum contacts with the forum as a result of providing services specifically targeting Massachusetts; and (b) its conduct subjects it to the controlling long-arm statute.

9.     The allegations of Paragraph 9 of the Complaint constitute legal conclusions to which no response of Fever is required.

**Allegation No. 10:**    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Defendant is subject to personal jurisdiction in the Commonwealth of Massachusetts and/or the wrongful acts committed by Defendant occurred, and are causing injury, in the Commonwealth of Massachusetts.

10.     The allegations of Paragraph 10 of the Complaint regarding venue and jurisdiction constitute legal conclusions to which no response of Fever is required.  Fever denies the remaining allegations of Paragraph 10 of the Complaint.

## PLAINTIFF AND ITS TRADEMARK RIGHTS

**Allegation No. 11:**    Plaintiff is a well-known organizer and promoter of various events and provider of cultural information about the Greater Boston area, which operates under the trademark "SECRET BOSTON" (the "Mark"). In particular, Plaintiff provides information in the fields of cultural events, community events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodations, and related event organization and advertising services

- 4 -

related to the Greater Boston area (collectively, "Plaintiff's Services"). See Exhibit A for a printout of Plaintiff's website located at the domain name, www.secretboston.net ("Plaintiff's Domain").

11.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and therefore denies the same.

**Allegation No. 12:**     Since at least 2010, Plaintiff has provided Plaintiff's Services under the Mark throughout the United States, including in Massachusetts, primarily through social media. See Exhibit B for a printout of Plaintiff's Facebook® page showing a selection of posts promoting Plaintiff's Services from 2010.

12.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, and therefore denies the same.

**Allegation No. 13:**     The Mark is, at minimum, suggestive and therefore inherently distinctive and eligible for trademark protection under the Lanham Act.

13.     The allegations of Paragraph 13 of the Complaint constitute legal conclusions to which no response of Fever is required.

**Allegation No. 14:**     Notwithstanding its inherent distinctiveness, Plaintiff has acquired secondary meaning in the Mark through its substantially exclusive and continuous use of the Mark to promote Plaintiff's Services since at least 2010.

14.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint, and therefore denies the same.

**Allegation No. 15:**     Plaintiff, the Mark, and Plaintiff's Services have been promoted in various regional publications, including the Boston Globe and Metro. Attached as <u>Exhibit C</u> are printouts of a selection of Plaintiff's media coverage.

15.     The factual statements in the printouts attached as Exhibit C speak for themselves, and to the extent Plaintiff distorts or mischaracterizes such statements, those allegations are denied.  Fever is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 of the Complaint, and therefore denies the same.

**Allegation No. 16:**     Plaintiff has an extensive social media following, promoting a conscious connection in the public's mind between the Mark and Plaintiff' Services, including the platforms below:

| Social Media Platform | Followers |
|---|---|
| Facebook® Page | 93,000+ |
| Facebook® Private Group | 47,000+ |
| Instagram® | 60,000+ |
| Tik Tok® | 18,000+ |
| Twitter® | 3,000+ |

Attached as <u>Exhibit D</u> are printouts from Plaintiff's social media accounts displaying the number of its followers.

16.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and therefore denies the same.

**Allegation No. 17:**     While Plaintiff has a strong reputation and following throughout the Commonwealth of Massachusetts, it provides Plaintiff's Services under the Mark to followers

throughout the country and indeed, throughout the world. Attached as <u>Exhibit E</u> are printouts from Plaintiff's web traffic analytics tools showing the geographic distribution of traffic to its Facebook® Page and Plaintiff's Domain for June 18, 2021-June 25, 2021.

17.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, and therefore denies the same.

**Allegation No. 18:**     Nearly 140,000 individuals subscribe to Plaintiff's e-newsletter promoting Plaintiff's Services. Attached as <u>Exhibit F</u> are printouts of a selection of Plaintiff's e-newsletters from as early as 2013.

18.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint, and therefore denies the same.

**Allegation No. 19:**     Secret Boston also works with over 2,000 event promotors, referred to by Secret Boston as "ambassadors", who attend events and help promote and publicize events through Secret Boston's social media outlets.

19.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint, and therefore denies the same.

**Allegation No. 20:**     Based on Secret Boston's popular social media accounts and thriving email list, Secret Boston has a robust following of individuals, both within and outside of Massachusetts, who are familiar with, and readily associate, the Mark with Plaintiff and Plaintiff's Services.

20.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and therefore denies the same.

**Allegation No. 21:**     As shown in the selection of e-newsletters attached as <u>Exhibit F</u> promoting corporate sponsored events, Secret Boston regularly works with corporate clients to promote

their businesses and events and such corporate clients are also familiar with, and readily associate, the Mark with Plaintiff and Plaintiff's Services.

21.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint, and therefore denies the same.

**Allegation No. 22:**     Since adopting the SECRET BOSTON trademark, Plaintiff has expended significant resources in the development of its business, goodwill and the reputation associated with the SECRET BOSTON trademark, including on advertising, promotional activities, and protecting and enforcing its exclusive rights in its Mark.

22.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, and therefore denies the same.

**Allegation No. 23:**     Plaintiff enjoys exclusive rights in its Mark by virtue of its use of SECRET BOSTON in interstate commerce in connection with Plaintiff's Services since at least 2010. The Mark is valid, subsisting, distinctive, and exclusively owned by Plaintiff.

23.     Fever denies the allegations in Paragraph 23 of the Complaint.

**Allegation No. 24:**     As a result of Plaintiff's extensive promotional efforts and its long use of its Mark, SECRET BOSTON has become uniquely identified with Plaintiff in the minds of consumers and has come to signify the high quality of services offered by Plaintiff.

24.     Fever denies that SECRET BOSTON has become uniquely identified with Plaintiff in the minds of consumers.  Fever is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24 of the Complaint, and therefore denies the same.

**Allegation No. 25:**     Plaintiff has acquired invaluable goodwill in the Mark and said Mark has become well-known and recognizable to the relevant public.

25.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint, and therefore denies the same.

## DEFENDANT'S INFRINGING ACTIVITIES AND ACTS OF UNFAIR COMPEITION

**Allegation No. 26:**     On information and belief, as early as 2016, Defendant's business model has been to organize, promote, and provide information in the fields of cultural events, community events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodations, and related event organization and advertising services related to a particular city (collectively, "Defendant's Services") under a family of marks that follow the format "SECRET [CITY]" throughout the world through its d/b/a "Secret Media Network." See Exhibit G for printouts of Defendant's websites located at www.feverup.com and www.secretmedianetwork.com.

26.     Fever admits that it offers information regarding events, news, entertainment and community-related services related to a particular city under a family of marks that follow the format "SECRET [CITY]" throughout the world and has operated an online media platform known as the "SECRET MEDIA NETWORK" in the United States since 2016.  Except as so admitted, Fever denies the allegations of Paragraph 26 of the Complaint.  The documents referenced in the last sentence of Paragraph 26 speak for themselves, and no further response is required.

**Allegation No. 27:**     On information and belief, Defendant launched each of these websites and began using the related SECRET [CITY] mark after Plaintiff first adopted and used in commerce its SECRET BOSTON trademark for same or similar services.

27.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies the same.

**Allegation No. 28:**     In Defendant's U.S. trademark registration for SECRET NYC (Reg. No. 5767128) and abandoned applications for SECRET LA (Ser. No. 88789711), and SECRET CHICAGO (Ser. No. 88789665), Defendant itself described Defendant's Services as follows:

CLASS 35: Advertising services, namely, promoting and marketing the goods and services of others in the field of cultural events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodation via print and electronic media; provision of an on-line marketplace for buyers and sellers of services; the bringing together of consumers and providers of a variety of services in the field of cultural events, travel, shopping, restaurants, entertainment, sporting events, temporary accommodation; Renting of advertising spaces

CLASS 41: Organizing community sporting and cultural events; Social club services, namely, arranging, organizing, conducting and hosting social events, social entertainment events, special events, get-togethers, and parties for club members for entertainment purposes; providing information, news and commentary in the fields of community events, social events, sports, sporting events, cultural events and entertainment events

CLASS 43: Providing information and advice on hotels and restaurants to tourists and business travelers

The foregoing descriptions are herein incorporated into the definition of "Defendant's Services." See Exhibit H for printouts of the issued registration and applications for Defendant's "SECRET [CITY]" trademarks as submitted to the U.S. Patent and Trademark Office ("USPTO").

28.     Fever admits that it owns U.S. Trademark Reg. No. 5767128.  Responding further, the documents referenced in Paragraph 28 speak for themselves, and to the extent Plaintiff distorts or mischaracterizes such documents, those allegations are denied.

**Allegation No. 29:**   Defendant's trademark applications allege the following dates of first use: SECRET CHICAGO (March 14, 2018), SECRET LA (March 14, 2018), and SECRET NYC (January 11, 2016). On information and belief, Defendant first adopted a SECRET [CITY] mark no earlier than 2016.

29.   Fever admits that it has operated an online media platform known as the "Secret Media Network" in the United States since 2016.  Responding further, Fever's trademark applications speak for themselves, and to the extent Plaintiff distorts or mischaracterizes such applications, those allegations are denied.

**Allegation No. 30:**   On information and belief, the entity Secret Media Network was formed in 2017, and is a d/b/a and/or licensed entity affiliate of and under the control of Fever Labs, Inc. Fever Labs, Inc. is the applicant at the USPTO for the marks SECRET CHICAGO (abandoned), SECRET LA (abandoned), and SECRET NYC (registered), each using as specimens printouts of webpages identifying "Secret Media Network" and the email domain address @secretmedianetwork.com. See Exhibit G for copies of the specimens submitted by Defendant to the USPTO in support of its applications.

30.   Fever denies the allegations in the first sentence of Paragraph 30.  Fever admits that it owns U.S. Trademark Reg. No. 5,767,128, and that it operates the website www.secretmedianetwork.com.  Responding further, Fever's trademark applications speak for themselves, and to the extent Plaintiff distorts or mischaracterizes such applications, those allegations are denied.

**Allegation No. 31:**   On its website, www.secretmedianetwork.com, Defendant asserts that, collectively through its network of Channels using "SECRET [CITY]," Defendant's "audience"

has 7 Million followers, 53 Million monthly reach, 19 Million monthly page views and 2 Million weekly views. See Exhibit G.

31.     Fever admits that the documents referenced in Paragraph 31 speak for themselves, and to the extent Plaintiff distorts or mischaracterizes such documents, those allegations are denied.

**Allegation No. 32:**     Despite Plaintiff's prior rights in and to the Mark, on information and belief, Defendant began providing Defendant's Services targeting the Greater Boston area using the name and identical trademark "SECRET BOSTON" and/or the confusingly similar trademark "SECRET MEDIA BOSTON" (collectively, the "Infringing Marks") on or around June 12, 2020, long after Plaintiff acquired exclusive rights in the Mark. See Exhibit I for a printout of Defendant's website located at www.secretboston.com ("Infringing Domain").

32.     Fever denies the allegations contained in Paragraph 32.

**Allegation No. 33:**     Defendant's Services provided under the Infringing Marks are similar to, overlap with and directly compete with Plaintiff's Services provided under the Mark.

33.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's Services in Paragraph 33, and therefore denies the same.

**Allegation No. 34:**     Defendant's Services provided under the Infringing Marks are offered and provided throughout the United States, including in Massachusetts, through its website located at the Infringing Domain and its social media accounts, including @secretmediaboston and @secretboston.smn on Facebook® and @secret_boston on Instagram® (collectively, the "Defendant's Social Media Accounts"). See Exhibit J for printouts of the Defendant's Social Media Accounts.

34.     Fever admits that conducts business throughout the United States, including in Massachusetts.  Except as so admitted, Fever denies the allegations of Paragraph 34.  The documents referenced in the last sentence of Paragraph 34 speak for themselves, and no further response is required.

**Allegation No. 35:**     The Infringing Domain wholly adopts the Mark and is identical to Plaintiff's domain name, www.secretboston.net, except that Defendant has adopted a different generic top-level domain (".com") into its Infringing Domain.

35.     Fever denies the allegations of Paragraph 35.

**Allegation No. 36:**     On information and belief, Defendant and/or its officers were aware of Plaintiff, Plaintiff's Mark, and Plaintiff's Services prior to launching Defendant's Services and at an absolute minimum, prior to launching Defendant's Services under the Infringing Marks. In particular, Defendant would have discovered Plaintiff owned the domain name www.secretboston.net on which Plaintiff promotes the Mark and the associated Plaintiff's Services under it prior to registering the Infringing Domain through a basic Internet search. Attached as Exhibit K is a printout showing various search engines that continue to list Plaintiff's Domain as the first search result for searches for "Secret Boston."

36.     Fever admits some awareness of Plaintiff prior to posting content on the website www.secretboston.com in 2020, but denies the remaining allegations of Paragraph 36. The documents referenced in the last sentence of Paragraph 36 speak for themselves, and no further response is required.

**Allegation No. 37:**     On information and belief, Defendant's CEO and founder, Ignacio Bachiller, was exposed to Plaintiff, Plaintiff's Mark, and Plaintiff's Services while living in the Greater Boston area during the four years he attended the Massachusetts Institution of Technology (MIT) in Cambridge, Massachusetts, from 2010 to 2014, a period during which Plaintiff Secret Boston was already actively promoting its services under the SECRET BOSTON Mark in Massachusetts, including to MIT students. Attached as Exhibit L is a printout from Mr. Bachiller's public LinkedIn® profile showing he attended MIT.

37.     Fever denies the allegations of Paragraph 37. The documents referenced in the last sentence of Paragraph 37 speak for themselves, and no further response is required.

**Allegation No. 38:**     Because Defendant has adopted the identical or confusingly similar Infringing Marks and offers Defendant's Services, which directly compete and overlap with

Plaintiff's Services provided under its Mark, prospective purchasers, and consumers of the Defendant's Services, and others are likely to be confused as to whether the services offered under Defendant's Infringing Marks emanate from or are in some way affiliated with, sponsored, or approved by Plaintiff.

      38.     Fever denies the allegations of Paragraph 38.

**Allegation No. 39:**    Defendant's use of Plaintiff's SECRET BOSTON Mark has already led to actual confusion.

      39.     Fever denies the allegations of Paragraph 39.

**Allegation No. 40:**    For example, there has been actual confusion concerning competing Vincent Van Gogh exhibits, namely, Defendant's event entitled "Van Gogh– The Immersive Experience" ("Defendant's Van Gogh Event") promoted using the Infringing Marks and a third-party organized event entitled "Immersive Van Gogh" (the "IVG Event"), which Plaintiff has promoted under its Mark. Attached as <u>Exhibit M</u> are press release from the Better Business Bureau about confusion between Defendant's Van Gogh Event and the IVG Event, and related press regarding such.

      40.     Fever denies the allegations of Paragraph 40. The documents referenced in the last sentence of Paragraph 40 speak for themselves, and no further response is required.

**Allegation No. 41:**    Plaintiff has received numerous phone complaints from distraught consumers who purchased tickets for Defendant's Van Gogh Event indicating that they confused Plaintiff for Defendant when purchasing tickets. Examples include:

    a.     A call received February 3, 2021 complaining about a cancelled event purportedly organized by Defendant and demanding a refund.

    b.     A call received May 1, 2021 complaining about the lack of an event and the requirement to download a FEVER branded mobile application in order to use the tickets purchased for an event purportedly organized by Defendant and demanding a refund.

     c.      A call received May 6, 2021 complaining about the requirement to download a FEVER branded mobile application in order to use the tickets purchased for an event purportedly organized by Defendant and demanding a refund.

     d.      A call received May 6, 2021 demanding a refund for tickets purchased for an event purportedly organized by Defendant.

Attached as Exhibit N is a summary of phone calls received by Plaintiff.

41.      Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41, and therefore denies the same.  The documents referenced in the last sentence of Paragraph 41 speak for themselves, and no further response is required.

**Allegation No. 42:**     Plaintiff has also received numerous email complaints from upset customers who purchased tickets for Defendant's Van Gogh Event indicating that they confused Plaintiff for Defendant when purchasing tickets. Examples include:

     a.      "I would like to know by tomorrow, March 4 where it will be held or I will contact my credit card company to arrange to cancel the tickets. And, before you remind me that the tickets are non-refundable, I'm not sure that will be true if your program has been misrepresented. I would appreciate your prompt attention to my request."- from an Earthlink.net account on March 3, 2021.

     b.      "I hope you have some luck in reclaiming Secret Boston. I 100% thought that they made their initial announcement through you when this whole thing started. It took me a few days to realize that they had created an identically named entity and were in no way affiliated with the Secret Boston that I've known of for years."- from an event venue provider on March 8, 2021.

     c.      "I also was under the impression that this was You , I purchased tickets online and downloaded the fever app which is where the barcode tix are , with no location as of yet  I'm so embarrassed that I fell victim to this."- from a Gmail account on March 11, 2021.

     d.      "Are you affiliated with the Fraudulent Secret Boston Site that is taking people's money for a copycat or fake show?"- from a Yahoo account on March 7, 2021.

Attached as Exhibit O are printouts of a selection of written complaints received by Plaintiff mistaking it for Defendant.

42.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, and therefore denies the same.  The documents referenced in the last sentence of Paragraph 42 speak for themselves, and no further response is required.

**Allegation No. 43:**     As referenced in <u>Exhibits M-O</u>, Defendant's Van Gogh Event is the subject of widespread consumer complaints as consumers are upset over Defendant's purported "nonrefundable" ticket policy as well as Defendant's practice of withholding the event location even after customers purchase tickets.

43.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore denies the same.  The documents referenced in the last sentence of Paragraph 43 speak for themselves, and no further response is required.

**Allegation No. 44:**     On information and belief, the actual confusion associated with the Defendant's Van Gogh Event has been revealed largely because of Defendant's negligent administration of Defendant's Services in that event, but this evidence also strongly suggests the very same level of confusion occurring with respect to other Defendant sponsored or offered events, where these confused consumers may have had no reason to contact Plaintiff to complain or for refunds, yet still believing they had done business with Plaintiff Secret Boston rather than Defendant.

44.     Fever denies the allegations in Paragraph 44.

**Allegation No. 45:**     Indeed, actual confusion between Secret Boston and the Defendant based on Defendant's continued use of the Infringing Mark continues to this day and Secret Boston

continues to field questions from consumers confused as to what relationship Secret Boston has with Defendant. Examples include:

- "You are not the true Secret Boston."-email from a bhcc.edu account on June 8, 2021 in response to receiving one of Secret Boston's e-newsletters.

- "I have been a follower of Secret Boston for years and am wondering if there is third party scam before I purchase tickets as the ads seem to be deceiving. "-email from an outlook.com account received on June 28, 2021.

- "hey, did you guys change your logo? i like the black and white better than the gold"- email from an aol.com account received on June 28, 2021. See Exhibit J showing Defendant's use of a gold colored logo on one of its Facebook® pages.

Attached as Exhibit P are printouts of a selection of written inquiries from June of 2021, received by Plaintiff mistaking it for Defendant.

45.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45, and therefore denies the same.  The documents referenced in the last sentence of Paragraph 45 speak for themselves, and no further response is required.

**Allegation No. 46:**     Defendant's use of the Infringing Mark has tarnished Plaintiff's reputation because Defendant's Services have been provided negligently and have caused numerous problems and consumer complaints, including to the Better Business Bureau.

46.     Fever denies the allegations in Paragraph 46.

**Allegation No. 47:**     On March 10, 2021, Defendant wrote to Plaintiff, purportedly to discuss ways to avoid confusion between the Infringing Domain and Plaintiff's www.secretboston.net (the "Letter").

47.     Fever admits that it communicated with Plaintiff on or about March 10, 2021, and that the statements in that letter speak for themselves.  To the extent Plaintiff distorts or

mischaracterizes the statements in that letter, those allegations are denied.  Except as so admitted, Fever denies the allegations in Paragraph 47.

**Allegation No. 48:**    Plaintiff's and Defendant's respective counsel exchanged over a dozen correspondences related to the Letter and a potential resolution of the matter from April 8, 2021, through June 10, 2021, but were unable to resolve the matter.

48.    Fever admits that it communicated with Plaintiff and/or its counsel in or around April through June, 2021, and that certain of such communications involved a potential resolution.  Except as so admitted, Fever denies the allegations in Paragraph 48.

**Allegation No. 49:**    As of the filing of this Complaint, Defendant continues its unauthorized, misleading, and infringing use of the Infringing Marks despite being put on notice regarding Plaintiff's valid and exclusive trademark rights.

49.    Fever denies the allegations in Paragraph 49.

## FIRST CLAIM FOR RELIEF

**(Federal Unfair Competition-False Designations of Origin, False Descriptions and Representations, Unregistered Trademark Infringement)
[15 U.S.C., § 1125(a)]**

**Allegation No. 50:**    Plaintiff incorporates all prior allegations as if set forth fully herein.

50.    Fever incorporates by reference its responses to Paragraphs 1-49 of the Complaint.

**Allegation No. 51:**    This is a claim for unfair competition-false designations of origin, false descriptions and representations of and infringement of the Mark SECRET BOSTON arising under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

51.    Paragraph 51 states a legal conclusion for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 51.

**Allegation No. 52:**     Plaintiff's use and ownership of the Mark predates any use of the Infringing Marks by Defendant. Accordingly, Plaintiff is the exclusive owner of the Mark and, accordingly, has express authority to take action to prevent actual or threatened infringement of its trademark.

52.     Paragraph 52 states a legal conclusion for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 52.

**Allegation No. 53:**     Continually, for a long time prior to the acts of the Defendant complained of herein, Plaintiff offered Plaintiff's Services under its SECRET BOSTON Mark. Plaintiff's Services have been, and are now extensively, advertised throughout Massachusetts, New England, and beyond.

53.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and therefore denies the same.

**Allegation No. 54:**     Continually, for a long time prior to the acts of the Defendant complained of herein, Plaintiff has been and is now marketing and offering Plaintiff's Services bearing the Mark in the Commonwealth of Massachusetts and elsewhere in interstate commerce. Through Plaintiff's extensive offering of its services, the public has come to recognize Plaintiff's Services as being of excellent quality and reputation.

54.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and therefore denies the same.

**Allegation No. 55:**     Plaintiff's Services offered under the Mark have been continuous and have been for the purpose of acquainting the public with the excellent quality of Plaintiff's services so that consumers may, with knowledge and confidence, purchase and use Plaintiff's SECRET BOSTON-branded services. As a result, Plaintiff's Services offered under the Mark are well-

known, and the Mark has come to be and is recognized by the public as indicating that the services offered under the Mark originate with Plaintiff.

55.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, and therefore denies the same.

**Allegation No. 56:**   By reason of their high quality and as a result of Plaintiff's continued and extensive sales, advertising and promotion, Plaintiff's services offered under the Mark enjoy an excellent reputation among the public. The Mark, and all associated goodwill which have accrued to the Mark, are of great value to Plaintiff in the conduct of its business.

56.     Fever is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and therefore denies the same.

**Allegation No. 57:**   Defendant, with full knowledge of the distinctiveness and public recognition of the Mark, is promoting and offering services to the public under the Infringing Mark and Defendant's Services directly compete with and/or are highly related to Plaintiff's Services.

57.     Fever denies the allegations of Paragraph 57.

**Allegation No. 58:**   Defendant's use of the Infringing Marks constitutes use of a mark and trade name that is identical and/or confusingly similar to the Mark owned by Plaintiff and, as such, is confusing and misleading to the purchasing public.

58.     Fever denies the allegations of Paragraph 58.

**Allegation No. 59:**   The unauthorized use of the Infringing Marks in connection with Defendant's Services constitutes a false designation of origin and false description or representation that wrongly and falsely designates the services offered by the Defendant as originating from, connected with, sponsored or authorized by Plaintiff.

59.   Paragraph 59 states a legal conclusion for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 59.

**Allegation No. 60:**   Defendant's conduct is intentional and willful.

60.   Fever denies the allegations of Paragraph 60.

**Allegation No. 61:**   Defendant's acts, as described in this Complaint, constitute a false designation of origin and false description and infringement within the meaning of 15 U.S.C. § 1125(a). Plaintiff has been damaged and will continue to be damaged by Defendant's acts.

61.   Paragraph 61 states a legal conclusion for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 61.

**Allegation No. 62:**   Defendant's conduct is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation and will continue both to damage Plaintiff and to deceive the public unless preliminarily and permanently enjoined by this Court.

62.   Fever denies the allegations of Paragraph 64.

**Allegation No. 63:**   Plaintiff is without an adequate remedy at law and is entitled to preliminary and permanent injunctive relief.

63.   Fever denies the allegations of Paragraph 63.

### SECOND CLAIM FOR RELEIF
**(State Unfair Competition Law)**
**[Mass. Gen. Laws. Ch.93A, §§ 1, 2 and 11]**

**Allegation No. 64:**   Plaintiff incorporates all prior allegations as if set forth fully herein.

64.   Fever incorporates by reference its responses to Paragraphs 1-63.

**Allegation No. 65:**     Defendant engages in trade and commerce within the Commonwealth of Massachusetts within the meaning of Mass. Gen. Laws ch. 93A, §§ 1 and 11.

65.     Paragraph 65 states a legal conclusion for which no answer is required.

**Allegation No. 66:**     Plaintiff engages in trade and commerce within the Commonwealth of Massachusetts within the meaning of Mass. Gen. Laws ch. 93A, §§ 1 and 11.

66.     Paragraph 66 states a legal conclusion for which no answer is required.

**Allegation No. 67:**     Defendant's wrongful acts as described in this Complaint occurred primarily and substantially within the Commonwealth of Massachusetts.

67.     Paragraph 67 states a legal conclusion for which no answer is required.

**Allegation No. 68:**     Defendant's acts within Massachusetts as described in this Complaint constitute unfair methods of competition or unfair or deceptive acts or practices in Massachusetts within the meaning of the Unfair and Deceptive Trade Practices Act, Mass. Gen. Laws ch. 93A, §§ 2, and 11 and are a knowing and willful violation thereof. Plaintiff has been damaged and will continue to be damaged by Defendant's acts.

68.      Fever denies the allegations of Paragraph 68.

**Allegation No. 69:**     Defendant's violations of Mass. Gen. Laws ch. 93A, §§ 2 and 11 have or may have the effect of causing a loss of money or property to Plaintiff. As such, Plaintiff is entitled to injunctive relief pursuant to Mass. Gen. Laws ch. 93A, § 11.

69.     Fever denies the allegations of Paragraph 69.

**Allegation No. 70:**     Plaintiff is seeking injunctive relief, treble damages, and reasonable attorney's fees and costs incurred in this action pursuant to Mass. Gen. Laws ch. 93A, § 11.

70.     Paragraph 70 states a legal conclusion for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 70.

**Allegation No. 71:**    Plaintiff is without an adequate remedy at law and is entitled to a permanent injunctive relief.

71.    Fever denies the allegations of Paragraph 71.

### THIRD CLAIM FOR RELIEF
### (Violation of Anti-cyberquatting Consumer Protection Act)
### [15 U.S.C. § 1125(d)

**Allegation No. 72:**    Plaintiff incorporates all prior allegations as if set forth fully herein.

72.    Fever incorporates by reference its responses to Paragraphs 1-71.

**Allegation No. 73:**    The Mark was distinctive at the time Defendant registered the Infringing Domain.

73.    Paragraph 73 states a legal conclusion for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 73, and expressly denies any domain was infringing.

**Allegation No. 74:**    The Infringing Domain is identical or confusingly similar to the Mark.

74.    Fever denies the allegations of Paragraph 74.

**Allegation No. 75:**    On information and belief, Defendant had a bad faith intent to profit from the Mark by registering and using the Infringing Domain.

75.    Fever denies the allegations of Paragraph 75.

**Allegation No. 76:**    Specifically, Defendant has promoted and distributed Defendant's Services on and through the Infringing Domain with knowledge of Secret Boston's prior rights in order to trade on and profit from Secret Boston's goodwill.

76.    Fever denies the allegations of Paragraph 76.

**Allegation No. 77:**    Defendant must have expected that any use of the Infringing Domain would cause harm to Secret Boston. The Infringing Domain– wholly incorporating the Mark– is

so obviously indicative of being authorized by Secret Boston that Defendant's use of the Infringing Domain inevitably leads to confusion.

77.     Fever denies the allegations of Paragraph 77.

**Allegation No. 78:**     Defendant's acts as described in this Complaint constitute cybersquatting within the meaning of 15 U.S.C. § 1125(d). Plaintiff has been damaged and will continue to be damaged by Defendant's acts.

78.     Fever denies the allegations of Paragraph 78.

**Allegation No. 79:**     Defendant's conduct is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation, and will continue both to damage Plaintiff and to deceive the public unless preliminarily and permanently enjoined by this Court. Plaintiff has no adequate remedy at law.

79.     Fever denies the allegations of Paragraph 79.

**Allegation No. 80:**     Plaintiff seeks transfer of the Infringing Domain pursuant to 15 USC § 1125(d)(1)(C).

80.     Paragraph 80 states a legal conclusion for which no answer is required.  To the extent that an answer is required, Fever denies the allegations of Paragraph 80.

**Allegation No. 81:**     Plaintiff is without an adequate remedy at law and is entitled to a permanent injunctive relief.

81.     Fever denies the allegations of Paragraph 81.

## REQUEST FOR RELIEF

Fever denies that Plaintiff is entitled to any of the relief set forth in its Request for Relief.

## DEMAND FOR JURY TRIAL

Fever demands a jury trial on all claims so triable.

## AFFIRMATIVE DEFENSES

Fever, for its affirmative defenses, states as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred in whole or in part by the doctrine of unclean hands, and/or Plaintiff should be estopped from pursuing its claims for relief in light of its own conduct. As described *infra* in Fever's Counterclaims, Plaintiff and its principal, Michelle McCormack, have published and broadly disseminated false, misleading, and defamatory statements regarding Fever and its business in order to malign Fever and deliberately sow confusion in a bad faith effort to solicit consumer communications it could later tout as examples of "confusion" to manufacture the impression that confusion was occurring in the marketplace and thereby bolster its litigation position in this action.  In particular, as described in Fever's Counterclaims and incorporated herein by reference, Plaintiff made, *inter alia*, the following statements regarding Fever:

- "Frustrating news.  A group from Barcelona has begun promoting events in Boston under the moniker 'Secret Boston'.  Our team has fielded dozens of phone calls from people who have paid for tickets to events that did not happen and they were unable to get refunds."  Secret Boston Facebook post dated March 4, 2021 (link: https://www.facebook.com/SecretBoston/posts/10160545075955830), a web capture of which is attached hereto as Exhibit A.

- "[D]on't be duped! by the FAKE Secret Boston[.]"  Secret Boston blog article "Written By Michelle McCormack," titled "Beware of the Fake Secret Boston," and

- 26 -

dated March 4, 2021 (link: https://www.secretboston.net/blog/beware-of-the-fake-secret-boston), an Internet Archive Wayback Machine ("Wayback Machine") capture of which is attached hereto as Exhibit B.

- "Our team asks you to please spread the word to your fellow Bostonians and to most of all beware of purchasing tickets from the fake Secret Boston.  You will know them by their logo which is yellow - ours is black and white.  Please email us if you have had a similar experience and we will try to help: crew@secretboston.net ❤️"  See Exhibit B.

- "We created this graphic for all of the people who have been calling and emailing us all week looking for their tickets. They are posting it to all their socials:"



Comment by Secret Boston to the Secret Boston Facebook post in Exhibit A (link: https://www.facebook.com/SecretBoston/posts/10160545075955830), a web capture of which comment is attached hereto as Exhibit C.

- "We are going to be on Fox 25 tonight at 10 talking about the fake Secret Boston." Secret Boston Facebook post dated March 6, 2021 (link: https://www.facebook.com/SecretBoston/posts/10160549857675830), a web capture of which is attached hereto as Exhibit D.

- "Please report their Instagram account as being an imposter account so people stop being duped."  Secret Boston Facebook post dated March 7, 2021 (link: https://www.facebook.com/SecretBoston/posts/10160551675205830), a web capture of which is attached hereto as Exhibit E.

- "'Every time I look at my phone, it's just nonstop emails.' … 'They're forwarding their [confirmation] emails like, 'Wait, can you tell me if this is the fake one?''"  Boston Magazine article titled "There's Another 'Secret Boston' in Town, and the Original Isn't Happy about It" and dated March 9, 2021 (link: https://www.bostonmagazine.com/news/2021/03/09/secret-boston-van-gogh), a Wayback Machine capture of which is attached hereto as Exhibit F (quoting Michelle McCormack) (brackets in original).

- "One girl, who bought tickets from the FAKE Secret Boston, was so upset (hurt) we actually Venmo'd her $100 because we felt so bad."  Secret Boston webpage titled "I Stand with the REAL Secret Boston™" and dated April/May 2021 (link: https://www.secretboston.net/i-stand-with), a Wayback Machine capture of which is attached hereto as Exhibit G.

- "BBB (Better Business Bureau) gives them an F rating."  Secret Boston blog article "Written By Michelle McCormack," titled "Beware of the Fake Secret Boston," and still being posted as of the date of this filing (link:

https://www.secretboston.net/blog/beware-of-the-fake-secret-boston), a web capture of which is attached hereto as Exhibit B-1.

By virtue of Plaintiff's own inequitable conduct with respect to Fever, Plaintiff's hands are unclean, and it is not entitled to any relief.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's request for preliminary and/or permanent injunctive relief is moot.  On its own volition and in a good faith effort to resolve Plaintiff's concerns, Fever has undertaken a complete rebrand to BOSTON UNCOVERED, including without limitation migrating its entire website to www.bostonuncovered.com and changing all of its social media handles to BOSTON UNCOVERED-iterative handles.  Fever's rebrand has eliminated any possibility of confusion or harm to Plaintiff, let alone irreparable harm.  Examples of the website and social media accounts are attached hereto.  *See* Exhibit H (web captures of www.bostonuncovered.com home page and Boston Uncovered Facebook and Instagram pages).

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by laches.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's continued pursuit of its claims for injunctive relief in the wake of Fever's voluntary, good-faith rebrand is vexatious and oppressive, renders this case exceptional, and entitles Fever to a recovery of its reasonable attorneys' fees and costs from Plaintiff under 28 U.S.C. § 1117.

### RESERVATION

Discovery and further investigation may show that Fever has additional, as yet unstated, affirmative defenses or counterclaims.  Fever reserves the right to assert such additional affirmative defenses or counterclaims once they become known.

## **COUNTERCLAIMS**

Defendant and Counterclaim-Plaintiff Fever Labs, Inc. ("Fever") brings these Counterclaims against Counterclaim-Defendants Secret Boston, LLC ("SB" or "Plaintiff") and Michelle McCormack ("McCormack").  As set forth more fully below, Fever asserts claims for defamation and commercial disparagement under the laws of the Commonwealth of Massachusetts against SB and McCormack based on their numerous defamatory and derogatory public statements that were broadly disseminated over the past seven months as part of their ongoing campaign to falsely malign Fever, and to wrongfully sow confusion among consumers in a bad faith effort to bolster SB's litigation position with regard to the infringement claims it has asserted against Fever.  SB and McCormack's statements disparaged and defamed Fever thereby damaging its reputation among consumers in the Boston market where the parties operate. Fever seeks injunctive relief and damages to put an end to SB and McCormack's smear campaign and to stop the false and derogatory statements they have published, disseminated, promoted, and even profited from to Fever's irreparable detriment.

In addition, Fever seeks a declaratory order from this Court that:

(1) Fever's rebranded trademark and platform, BOSTON UNCOVERED, which it undertook voluntarily as detailed in Fever's Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 17), does not infringe Plaintiff's alleged trademark rights in SECRET BOSTON and do not violate federal or state laws relating to trademark

infringement, unfair competition, or deceptive trade practices, including without limitation 15 U.S.C. §§ 1114 and 1125(a), or the statutory or common law of the Commonwealth of Massachusetts or the laws of other states; and

(2) Fever's longstanding use of its trademark SECRET MEDIA NETWORK and its naming convention SECRET + [CITY] (in reference to cities other than Boston) do not infringe Plaintiff's trademark rights in SECRET BOSTON and do not violate federal or state laws relating to trademark infringement, unfair competition, or deceptive trade practices, including without limitation 15 U.S.C. §§ 1114 and 1125(a), or the statutory or common law of the Commonwealth of Massachusetts or the laws of other states.

An actual controversy and subject matter with regard to the above issues exist because Plaintiff has claimed in its Reply in further support of its Motion for Preliminary Injunction (ECF No. 21) that despite Fever's rebrand, Fever is still engaged in trademark infringement as a result of these other uses of "Secret."

## THE PARTIES

1.      Defendant and Counterclaim-Plaintiff Fever Labs, Inc. is a Delaware corporation with offices in New York, New York, and Camden, Delaware.

2.      Plaintiff and Counterclaim-Defendant Secret Boston LLC is a Delaware limited liability company with a principal place of business located at 68 Centre Street, Boston, MA 02130.

3.      Counterclaim-Defendant Michelle McCormack is an individual who, on information and belief, maintains a residence in Boston, Massachusetts.  McCormack is the founder and principal of Secret Boston LLC.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.     This Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a) because these counterclaims are so related to the claims alleged by Plaintiff and Counterclaim-Defendant SB in this action that they form the same case or controversy.

6.     This Court has personal jurisdiction over SB because SB has consented to personal jurisdiction in this District by initiating the instant lawsuit in this District and because SB transacts business in this District and SB's unlawful activities have occurred and caused injury in this District.

7.     This Court has personal jurisdiction over McCormack because McCormack resides in this District and transacts business in this District on behalf of SB and because McCormack's unlawful activities have occurred and caused injury in this District.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to these counterclaims occurred in this District.

## FACTUAL BACKGROUND

### *Fever and its Use of SECRET MEDIA NETWORK and "SECRET"*

9.     Fever owns an event ticketing platform that operates via www.feverup.com , and also owns an entertainment-focused online media platform branded as the "Secret Media Network" ("SMN").  SMN and its numerous SECRET-branded local channels feature local events, news, and entertainment experiences (for which consumers can often purchase tickets via the Fever app and Fever website) and promote online hyper-localized and shareable city guides.

10.     Each local SECRET channel uses a name comprised of "SECRET" plus the relevant geographic term, e.g., Secret LA, Secret NYC, Secret Chicago, etc.

11.     SMN has maintained and published content on these "Secret" channels in numerous cities worldwide for up to 5 years, and had done so on www.secretboston.com  from May 2020 to July 26, 2021.

12.     Fever and SMN have grown rapidly and gained significant media acclaim since launch.  Worldwide, Fever's SMN has over 7,000,000 social media followers, a monthly audience reach of 53,000,000, weekly video views of over 2,000,000, and over 19,000,000 in monthly page views.

13.     In the six months leading up to January 25, 2020, SMN's Facebook engagement alone exceeded 11,500,000 individuals.

14.     SMN collaborated with over 200 partners in 2019 alone, including major brands like Adidas and Starbucks.

15.     The local Secret-branded channels also work with local businesses to promote their latest projects.

16.     Moreover, since January 2016, Fever has spent over USD $15,000,000 in marketing and advertising efforts to promote SMN and its SECRET-branded media channels in the U.S. alone.

17.     As a result of these substantial investments, Fever has accumulated significant goodwill among consumers across the U.S. with respect to its SMN and Secret-branded media channels, and consumers have come to know and associate SMN and Fever's Secret-iterative marks with Fever.

18.     In addition to its common law rights in its portfolio of SECRET-iterated marks, Fever also owns federal marks pertaining to its business, such as U.S. Trademark Reg. No.

- 33 -

5,767,128 for SECRET NYC & Design with a first use date of January 11, 2016 covering its media and event services (the "SECRET NYC Registration").

19.      Fever is not a "fake" company and neither is its Boston-facing website.  The events it promotes and sells tickets to are real, and the customers who purchase their tickets are not "scammed."

20.      In line with its national strategy, Fever went live with its Secret Boston channel in May 2020.  It did so in good faith and with no intent to create any confusion between it and Plaintiff.

21.      The domain www.secretboston.com  had been available on GoDaddy.com for years and Fever purchased it on December 17, 2019.

22.      At or around the same time, Fever launched its Secret Boston social media channels on Facebook and on Instagram.

23.      When Fever commenced its use of SECRET BOSTON it did with use of an "SB" logo (which was uploaded to its Facebook page on April 28, 2020 and later to its website and other social media pages and posts):



24.     Since its launch in Boston www.secretboston.com incorporated a particular shade of yellow and has followed a branding scheme consistent with SMN's local media channels.

***Plaintiff SB's Use of Secret Boston and Its Purposeful Expansion into Fever's Business***

25.     Plaintiff claims it has used "Secret Boston" in connection with a blog relating to Boston events since September 2010.

26.     Plaintiff has no federal registration for SECRET BOSTON and only began the process of seeking one after it commenced this dispute.

27.     Before Fever launched in Boston, Plaintiff's secretboston.net business announced itself as primarily related to recruiting "Brand Ambassadors" for the purpose of mediating between the brands and social media influencers and/or to establishing a members-only community for entertainment purposes in the Boston area, and did not sell entertainment or event tickets.

28.     After Fever launched www.secretboston.com and in the months leading up to this Motion, Plaintiff made a series of changes to its website, the appearance of its social media

handles, its logo, and how it characterized its activities.  Those changes all made Plaintiff's

operations appear more similar to Fever's Secret Media outlets.  See Exhibit I (Wayback

Machine captures of www.secretboston.net home page as of October 20, 2017, December 15,

2019, November 12, 2020, November 17, 2020, and April 29, 2021, together with web capture of

same as of April 14, 2021).

29.     For example, from 2010 until November 2020, Plaintiff did not use a stylized

"SB" logo in connection with its business but rather used the full term, as set forth below:



| Plaintiff's Logo in 2014 | Plaintiff's Logo in 2015 | Plaintiff's Logo in 2017 |
|---|---|---|

30.     In January 2020, Plaintiff again altered its mark, this time placing SECRET

BOSTON on top of the well-known CITGO logo (which of course Plaintiff does not own any

rights to), and asking its followers "Whatcha think of our new logo?"



- 36 -

31.     It was not until November 7, 2020 - months after Fever's use of SB - that Plaintiff posted the below to its Facebook page, stating "New logo":



32.     Even more recently, on July 11, 2021, Plaintiff created a "secretbostonevents" account on Instagram purporting to offer, for the first time, event promotion and ticket sales.

### Plaintiff and McCormack Defame Fever and Instigate "Consumer Confusion"

33.     From Fever's www.secretboston.com launch in May 2020 through at least February 3, 2021, the parties coexisted without a single example of so-called "confusion."

34.     In her supporting Declaration to Plaintiff's Motion for Preliminary Injunction in this matter (ECF No. 6-3) ("McCormack Declaration"), McCormack states that "[b]eginning in or around March of 2021, Secret Boston received multiple complaints and inquiries from the public about an event entitled 'Van Gogh– The Immersive Experience' purportedly organized by [Fever]."

35.     McCormack omits that she and SB took deliberate actions to change its website and logo to more closely resemble Fever's.

36.     In addition, SB and McCormack made numerous defamatory public statements on its website, in social media posts, and to the press disparaging Fever.

37.     On March 4, 2021, SB and McCormack posted a blog article titled "Beware of the Fake Secret Boston" (link: https://www.secretboston.net/blog/beware-of-the-fake-secret-boston). See Exhibit B.

38.     In that blog article, and over the ensuing days, weeks, and months, SB and McCormack made the following defamatory statements, among others:

- "Frustrating news.  A group from Barcelona … has begun promoting events in Boston under the moniker 'Secret Boston'.  The latest scam are [sic] tickets they are selling to an alternative Van Gogh immersive experience. … Our team has fielded dozens of phone calls from people who have paid for tickets to events that did not happen and they were unable to get refunds."  See Exhibit B; see also Exhibit A (Secret Boston Facebook post dated March 4, 2021).

- The header of the above-cited blog article leads with the following graphic:



See Exhibit B.

- "[D]on't be duped! by the FAKE Secret Boston[.]"  See id.

- "Somehow, the group out of Barcelona was able to buy the .com and has since set up a blog that looks very similar to ours, and an Instagram account that uses our SB logo - just with different colors."  See id.

- "Our team asks you to please spread the word to your fellow Bostonians and to most of all beware of purchasing tickets from the fake Secret Boston.  You will know them by their logo which is yellow - ours is black and white.  Please email us if you have had a similar experience and we will try to help: crew@secretboston.net ❤️" See *id.*

- "We created this graphic for all of the people who have been calling and emailing us all week looking for their tickets. They are posting it to all their socials:"



See Exhibit C (Secret Boston comment to the Secret Boston Facebook post in Exhibit A).

- "We are going to be on Fox 25 tonight at 10 talking about the fake Secret Boston."  See Exhibit D (Secret Boston Facebook post dated March 6, 2021).

- "'… then this comes along and could literally ruin our reputation, but also it's just so shady.'"  Boston 25 News article titled "Local ticket seller says European company is using its name to trick, scam people" and dated March 6, 2021 (link:

https://www.boston25news.com/news/local-ticket-seller-says-european-company-is-using-its-name-trick-scam-people/NL2YNRLAINGSNHH4PTARNCW3CU/),

a Wayback Machine capture of which is attached hereto as Exhibit J (quoting

McCormack).

- "'This company has deep pockets, they're a conglomerate in Europe, so I

  imagined they paid a lot of money for it, and that is the problem.'"  See *id.*

  (quoting McCormack).

- "McCormack said … she hopes more people won't fall for this account."  See *id.*

- "Please report their Instagram account as being an imposter account so people

  stop being duped."  See Exhibit E (Secret Boston Facebook post dated March 7,

  2021).

- "'Every time I look at my phone, it's just nonstop emails.' … 'They're

  forwarding their [confirmation] emails like, 'Wait, can you tell me if this is the

  fake one?''"  See Exhibit F (Boston Magazine article dated March 9, 2021)

  (quoting McCormack) (brackets in original).

- "'Apparently many people are unhappy with their purchase and are looking to us,

  the original Secret Boston, for remedy … .'"  Boston.com article titled "There are

  now two 'Secret Boston' companies, and things are getting ugly" and dated April

  14, 2021 (link: https://www.boston.com/culture/events/2021/04/14/secret-boston-

  fever-van-gogh), a Wayback Machine capture of which is attached hereto as

  Exhibit K (quoting McCormack).

- "One girl, who bought tickets from the FAKE Secret Boston, was so upset (hurt) we actually Venmo'd her $100 because we felt so bad."  See Exhibit G (Secret Boston webpage dated April/May 2021).

- "[T]his European company is wrong."  See *id.*

- "'People are getting hustled into things or buying tickets they don't want, and it's being pinned on me.'"   Boston Globe article titled "Two Van Gogh Exhibits. Two Secret Bostons. And now, a swirl of controversy" and dated April 29, 2021, a copy of which is attached hereto as Exhibit L (quoting McCormack).

- "'What this fake group is doing is an egregious abuse of social media.'"  See *id.* (quoting Secret Boston).

- "3-months ago, a heavily funded European conglomerate began using our trusted brand name to sell tickets to unsuspecting Bostonians. … [I]f we lose, it will be a travesty and a slap in the face to the people of Boston and to small businesses everywhere."  Secret Boston webpage titled "Secret Boston is in the fight of our lives" (link: https://www.secretboston.net/the-story-legal-battle), a web capture of which is attached hereto as Exhibit M.

- "BBB (Better Business Bureau) gives them an F rating."  See Exhibit B-1.

39.     Each of these statements were of and concerning Fever and its SMN business, operating at the time under its "SB" logo and via its website www.secretboston.com and "Secret Boston" social media handles, which are explicitly and repeatedly named.

40.     Each of these statements was false at the time they were published by SB and McCormack, and each of them remains false today.  SB and McCormack knew that these

statements were false, or acted with reckless disregard for their truth, when SB and McCormack made these statements.

41.     Specifically, SB and McCormack knew that Fever was not a "fake" company, or a "scam," or "hustling" customers by selling tickets to "events that never happened."

42.     Each of the foregoing statements are also clearly intended to malign and disparage Fever and its business reputation, to cultivate a negative impression of Fever among the public writ large, and to encourage consumers not to do business with Fever and to do business with Plaintiff instead.  In particular, SB and McCormack falsely accuse Fever of defrauding customers by selling tickets to events that do not ultimately occur.

43.     SB and McCormack also caused and encouraged the broad dissemination of these statements via its website and social media accounts.  The statements have never been corrected or taken down, even in the face of Fever's complete rebrand to BOSTON UNCOVERED, as described infra.

44.     SB and McCormack's statements damaged Fever's reputation.  This is confirmed by the comments made by readers of these statements in social media posts ("To add to what Secret Boston said this company is also using some of the same marketing graphics as the real event and a lot of the same language. Very very convincing. I'm still extremely upset though that I myself got duped and I just hope I can get my money back."; "Reported and blocked the fake one!"; "The company is just fake") see Exhibit C (from comments to Facebook post **at https://www.facebook.com/SecretBoston/posts/10160545075955830),** as well as in communications SB and McCormack allegedly received on behalf of Fever's customers who were told by SB and McCormack that the tickets they purchased were a "scam" ("Are you affiliated with the Fraudulent Secret Boston Site that is taking people's money for a copycat or

fake show?"; "I'm so embarrassed that I fell victim to this. Any thoughts or help on what to do? Is this real?"); see McCormack Declaration, Exhibits G and I.

45.     SB and McCormack appreciated that their mischaracterization of Fever's business as, inter alia,  "fake," a "scam," and "shady" were misleading to consumers.  SB and McCormack never attempted to correct consumer interpretations of their statements that the events to which Fever sold tickets were not going to occur, or that consumers had been or would be defrauded, "scammed," "hustled," or "duped" out of their money.

46.     SB and McCormack's statements caused actual and irreparable damage to Fever's business reputation.

47.     SB and McCormack's statements cause actual damage to Fever by expressly communicating to prospective customers not to do business with Fever, resulting in diverted sales.

48.     SB and McCormack's false, misleading, and deceptive statements have only intensified since the filing of the Complaint in this action, and persist to this day despite Fever's complete rebranding to Boston Uncovered.

49.     SB and McCormack created an entire page on the website **www.secretboston.net** exploiting the fact of this litigation and containing several explicitly false, misleading, and defamatory statements about Fever, mischaracterizing Fever's business and conduct in connection with this dispute.  Specifically, on the page **https://www.secretboston.net/the-story-legal-battle** appears the following statement posted by SB and McCormack:

Secret Boston is in the fight of our lives

3-months ago, a heavily funded European conglomerate began using our trusted brand name to sell tickets to unsuspecting Bostonians. Since then, this travesty has been covered in local and national news yet the conglomerate continues to buy ads on Facebook selling tickets under the name "Secret Boston".

For 10-years, we have poured our blood, sweat, and tears into growing this large yet tight-knit community of Bostonians and we will battle anyone who tries to destroy it - even a multi-million dollar company threatening to sue us into submission (if you can believe that one!). It's a classic David and Goliath situation.

But we are confident. We have goodwill from the community, a proven track record of honesty, healthy relationships with Boston businesses, organizations, the press, and The City of Boston itself. And the truth. Oh, and a 10-year common law trademark.

You never know though with the law, and if we lose, it will be a travesty and a slap in the face to the people of Boston and to small businesses everywhere.

50.     The foregoing statements are false or misleading because, *inter alia*, Fever first began operating the website www.secretboston.com in May 2020, not "3 months ago"; Fever is not trying to "destroy" SB or McCormack; and Fever has at no point "threaten[ed] to sue [SB or McCormack] into submission."  These statements are willfully false and defamatory, and they serve merely to tarnish Fever's reputation, usurp its business, and divert viewers and sales to SB and McCormack.

51.     SB and McCormack also now have an entire page on the website www.secretboston.net dedicated to the sale of merchandise exploiting the fact of this litigation that contains substantially identical false and misleading statements:

### WHY WE ARE SELLING MERCH, ALL OF A SUDDEN

Secret Boston is in the fight of our lives. 3-months ago a heavily funded European conglomerate began using our trusted brand name to sell tickets to unsuspecting Bostonians. Since then, this travesty has been covered in local and national news yet the conglomerate continues to buy ads on Facebook selling tickets under the name "Secret Boston".

For 10-years, we have poured our blood, sweat, and tears into growing this large yet tight-knit community of Bostonians and we will battle anyone who tries to destroy it - even a multi-million dollar company threatening to sue us into submission (if you can believe that one!). It's a classic David and Goliath situation.

But we are confident. We have goodwill from the community, a proven track record of honesty, healthy relationships with Boston businesses, the press, and The City of Boston itself. And the truth. Oh, and a 10-year common law trademark.

You never know though with the law, and if we lose it will be a travesty and a slap in the face to the people of Boston and to small businesses everywhere.

Help if you can. Our legal bills are already in the thousands and projected to be close to $250,000 when all is said and done. You can help by purchasing the SAVE merch below (it's cool looking, too!) or leaving a donation below that - any size helps.

Let's go fight the good fight!

Secret Boston webpage titled "Why We Are Selling Merch, All of a Sudden" (link:

https://www.secretboston.net/real-fund), a web capture of which is attached hereto as Exhibit N.

52. The foregoing statements are false and misleading for the reasons stated above.

Moreover, Fever is no longer using SECRET BOSTON as discussed below. Yet SB and

McCormack continue to use these false, misleading, and defamatory statements to this day.

53. Further down the same page at https://www.secretboston.net/real-fund , SB and

McCormack posted the following language which remains on the page as of the date of this

filing:

MAKE A DONATION.

Help us pay Secret Boston's $250,000 legal bills to stop a heavily funded European conglomerate from stealing our brand. Classic David and Goliath. Our community is in the fight of its life. In March of this year, the offending company (we do not name them to avoid giving them more publicity) began buying ads on Facebook under the name "Secret Boston" and selling event tickets to our unsuspecting community(full story and petition here). The Boston press has come to the rescue in [sic] but it is not enough. The company will not stop so we are going to court. Our legal bills are exorbitant because the offending company has hired one of the top law firms in the world to keep us quiet. But that is not happening. In order to successfully save our brand, we had to hire our own top law firm (experience and optics matter) and the bills have started piling up. WE WILL WIN, but we need your help.

Every week we will pick donors randomly to receive free SAVE Secret Boston merch!

See Exhibit N.

54. The foregoing statements are false and misleading for the reasons stated above,

and also because Fever is not "stealing [SB's] brand." As explained in detail infra,  Fever is no

longer using SECRET BOSTON.  Yet SB and McCormack continue to make these statements on their website.

55.     SB and McCormack's false and deceptive statements have misled a significant portion of the relevant purchasing public regarding the qualities and legitimacy of Fever's business, and a significant portion of the relevant purchasing public has been discouraged from doing business with Fever.

56.     As a result of this deception, SB and McCormack have diverted, and are currently diverting, sales to themselves that would have otherwise gone to Fever, resulting in pecuniary loss to Fever and unjust enrichment to SB and McCormack.  Furthermore, as a result of this deception, as well as SB and McCormack's ongoing defamatory online campaign, Fever has suffered, and is suffering, irreparable loss of goodwill associated with its business, its brand, and its products.

### *Fever's Rebrand to BOSTON UNCOVERED*

57.     On or about July 26, 2021, Fever completely rebranded to BOSTON UNCOVERED, including without limitation migrating its entire website to www.bostonuncovered.com and changing all of its social media handles to BOSTON UNCOVERED-iterative handles.  Fever's rebrand has eliminated any possibility of confusion or harm to Plaintiff, let alone irreparable harm.  Examples of the website and social media accounts are attached hereto.  See Exhibit H.

58.     As a result of the rebranding, Fever has ceased active use of SECRET BOSTON and www.secretboston.com.

59.     Fever does not prominently use SECRET MEDIA NETWORK on its BOSTON UNCOVERED website.  See Exhibit H.

- 46 -

60.     Notwithstanding the rebranding, in its Reply in further support of its Motion for

Preliminary Injunction (ECF No. 21), SB expands the scope of its original theory of infringement

to include BOSTON UNCOVERED.  See SB's Reply at 1 ("While Plaintiff agrees BOSTON

UNCOVERED is not confusingly similar to SECRET BOSTON *in the abstract*, this dispute is

not moot because Defendant has not disentangled its services/promotion from the Infringing

Marks, and it remains to be seen whether Defendant can run its BOSTON UNCOVERED brand

within a network of national SECRET[CITY] brands without causing confusion or reverse

confusion with Plaintiff.") (emphasis in original).

61.     SB also objects to new uses of the word "secret" by Fever not previously

identified as infringing.  See *id.* at 3 ("Defendant's website www.feverup.com promotes events

in all of its cities together, and allows users to review events in the Greater Boston area at

www.feverup.com/boston, where Defendant invites Boston users to 'discover tons of *secret*

places and find out about the best events and activities.'") (emphasis in original).

## COUNT I

### *Defamation Under Massachusetts Common Law*
### *(SB and McCormack)*

62.     Fever repeats and realleges each and every allegation contained above as if the

same were set forth fully herein.

63.     As detailed above, SB and McCormack have published false and defamatory

statements to third parties identifying Fever that are harmful to Fever's commercial and

reputational interests and falsely disparage Fever and its business.

64.     SB and McCormack intended for the publication of these false and defamatory

statements to result in reputational harm to Fever, including contempt, hatred, scorn, or ridicule

or otherwise for the false and defamatory statements to tend to impair Fever's standing in the

community.  Alternatively, SB and McCormack recognized or should have recognized that the publication of these false and defamatory statements was likely to result in reputational harm to Fever.

65.     SB and McCormack knew that their published statements were false and defamatory, or in the alternative, acted in reckless disregard of the truth or falsity of the statements.  SB and McCormack therefore acted with actual malice by publishing these false and defamatory statements.

66.     As a result of SB and McCormack's defamatory statements, Fever is has suffered and will continue to suffer pecuniary damages and irreparable harms, including permanent loss of customers, business opportunities, and goodwill.  Fever has suffered damage to its reputation for conducting its affairs honestly and competently and has been prejudiced in the operation of its business, and potential customers have been deterred from dealing with it.  SB and McCormack's false statements, moreover, are defamatory per se because they accuse Fever of fraudulent activity, impugn Fever's legitimacy, and prejudice Fever's business.

## COUNT II

### Commercial Disparagement or Injurious Falsehood
### Under Massachusetts Common Law (SB and McCormack)

67.     Fever repeats and realleges each and every allegation contained above as if the same were set forth fully herein.

68.     As detailed above, SB and McCormack have published false and defamatory statements to third parties and the public.

69.     SB and McCormack's statements include statements falsely representing the features and qualities of Fever's products and services.

70.     SB and McCormack intended for the publication of these false statements to result in pecuniary harm to Fever.  Alternatively, SB and McCormack recognized or should have recognized that publication of these false statements was likely to result in pecuniary harm to Fever.

71.     SB and McCormack knew these published statements were false when made.  In the alternative, SB and McCormack acted in reckless disregard of the truth or falsity of the statements.

72.     These statements have resulted in special damages to Fever in the form of pecuniary loss.  Fever is likely to suffer, and has suffered, and will continue to suffer such harm as a result of SB and McCormack's wrongful acts.

## COUNT III

### Violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11 (SB and McCormack)

73.     Fever repeats and realleges each and every allegation contained above as if the same were set forth fully herein.

74.     At all relevant times hereto, SB and McCormack were engaged in trade or commerce as those terms are used in Mass. Gen. Laws ch. 93A, §§ 2 and 11.

75.     McCormack is the founder and principal of SB.

76.     While engaged in trade or commerce, SB and McCormack were engaged in unfair and deceptive acts and practices and unfair methods of competition, including, without limitation, making false or misleading statements that misrepresent the characteristics or qualities of Fever's and SB's competing offerings and making false and defamatory statements about Fever's character as a business.

77.     SB and McCormack's misrepresentations are deceptive because, among other things, they are likely to deceive (and have deceived) a significant cross-section of reasonable consumers in the relevant market.  Those misrepresentations are unfair because, among other things, they violate established proscriptions against false advertising and unfair competition; are immoral, unethical, and unscrupulous; and cause substantial harm to consumers.

78.     SB's conduct is also deceptive and unfair because it constitutes disparagement and defamation, as alleged in Fever's Counts I and II above.

79.     As a result of the unfair and deceptive acts and practices, and unfair methods of competition, of SB, Fever has sustained and continues to sustain damages, including but not limited to harm to its reputation and goodwill, harm to its relationships with existing and prospective customers, loss of actual customers and prospective customers, lost business opportunities, and lost revenue and profit.

80.     As a result of these same unfair and deceptive acts and practices and unfair methods of competition, SB has been unjustly enriched at Fever's expense.

81.     The actions and transactions constituting the unfair and deceptive acts and practices and the unfair methods of competition described above occurred primarily and substantially within Massachusetts, in which SB does business, in which the unfair and deceptive statements originated, and in which the unfair and deceptive statements caused and continue to cause harm to Fever.

## COUNT IV

### Declaratory Judgment as to Non-Infringement of SECRET BOSTON (SB)

82.     Fever repeats and realleges each and every allegation contained above as if the same were set forth fully herein.

83.     Fever has ceased active use of "SECRET BOSTON" and www.secretboston.com
and has rebranded to BOSTON UNCOVERED.

84.     Fever uses BOSTON UNCOVERED and the website www.bostonuncovered.com.
Fever also uses BOSTON UNCOVERED iterations as its social media handles.

85.     Fever continues use of its longstanding SECRET MEDIA NETWORK trademark,
which use has been active and ongoing across the U.S. since at least as early as 2016.

86.     Fever does not prominently use SECRET MEDIA NETWORK on its BOSTON
UNCOVERED website but does use it at the bottom on the page of the website.

87.     After Fever rebranded to BOSTON UNCOVERED, migrated its website to
www.bostonuncovered.com, and changed all of its social media handles to BOSTON
UNCOVERED iterations, Plaintiff SB objected to Fever's use of BOSTON UNCOVERED and
continuing uses of SECRET even if not used in proximity to BOSTON, contending that such use
is likely to cause confusion to the public and violate trademark laws.

88.     Therefore, there exists an actual and justiciable controversy between Fever and
Plaintiff SB under 28 U.S.C. § 2201 and Fever is in need of a declaration of its rights and a
determination whether Fever's aforementioned uses of BOSTON UNCOVERED and SECRET
apart from BOSTON infringe upon Plaintiff SB's alleged trademark rights in SECRET
BOSTON.

89.     Fever's aforementioned uses are not likely to cause confusion, or mistake, or
deception among consumers, and is not likely to cause confusion, mistake, or deception as to the
affiliation, connection, or association of Fever's services with Plaintiff SB, or as to the origin,
sponsorship, or approval of Fever's services by Plaintiff SB.

90.     Fever's aforementioned uses do not violate Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

91.     Fever's aforementioned uses do not constitute trademark infringement under the statutory or common laws of the Commonwealth of Massachusetts, or laws of other States.

92.     Fever's aforementioned uses do not constitute deceptive trade practices under the Commonwealth of Massachusetts' deceptive trade practices statute, G.L. c. 93A and do not constitute unfair competition under the laws of the Commonwealth of Massachusetts or similar laws of any other state or common law.

93.     Based on the foregoing, pursuant to 28 U.S.C. § 2201, Fever is in need of a declaration of the rights and legal relations of the parties and is entitled to a declaratory judgment that Plaintiff SB is without right or authority to object to Fever's use of BOSTON UNCOVERED, SECRET MEDIA NETWORK, or its other uses of "Secret" not proximate to "Boston" or to seek to prevent Fever's use on the basis of alleged infringement, unfair competition, or deceptive trade practices under federal or state law.

## **REQUEST FOR RELIEF**

Wherefore, Fever prays for judgment in its favor and against Plaintiff and Counterclaim Defendant SB and Counterclaim Defendant McCormack as follows:

a) Enter judgment in favor of Fever on all counts;

b) Enter a preliminary and permanent injunction, including an order restraining SB and McCormack and their officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or acting in concert with them, from further publication and dissemination of the defamatory and commercially disparaging statements; requiring SB and McCormack to take down all such statements remaining on the website www.secretboston.net and any social media accounts owned, operated, and/or controlled by SB and/or McCormack; publish a statement explaining that such statements are not accurate and urging their withdrawal it from circulation by third parties; and restraining SB and McCormack from engaging in similar defamatory and commercially disparaging activity with regard to Fever in the future;

c)  Order that SB and McCormack pay Fever the damages Fever has sustained by reason of the conduct alleged herein;

d)  Multiply such damages by three times the actual amount found, as provided for under 15 U.S.C. § 1117 and Mass. Gen. Laws ch. 93A, § 11;

e)  Declare that Fever's use of BOSTON UNCOVERED, SECRET MEDIA NETWORK, and uses of SECRET even if not in proximity to Boston, do not infringe or violate any of Plaintiff SB's rights and that Plaintiff SB is without right or authority to object to Fever's use of the marks on the basis of the alleged infringement, unfair competition, or deceptive trade practices under federal or state law;

f)  Award Fever its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117, Mass. Gen. Laws ch. 93A, § 11, and/or Fed. R. Civ. Proc. 54(d); and

g)  Grant any and all other relief that the Court may deem appropriate under the circumstances.

## **DEMAND FOR JURY**

Fever respectfully demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated:  August 23, 2021

/s/ Nicholas G. Papastavros
Nicholas G. Papastavros (BBO No. 635742)
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110
Email: nick.papastavros@dlapiper.com
Phone: 617-406-6000
Fax:  617-406-6100

Tamar Duvdevani (Admitted Pro Hac Vice)
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel. (212) 335-4799

Kerry O'Neill (Admitted Pro Hac Vice)
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel. (212) 335-4682

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") on August 23, 2021.

/s/ Nicholas G. Papastavros
Nicholas G. Papastavros